```
        IN THE UNITED STATES DISTRICT COURT
      FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                   JACKSON DIVISION
```

**BOBBY G. CUMMINGS, SR.**                                          **PLAINTIFF**

**VS.**                                    **CIVIL ACTION NO. 3:05CV29-WHB-JCS**

**METROPOLITAN LIFE INSURANCE COMPANY**                             **DEFENDANT**


## OPINION AND ORDER

This cause is before the Court on the Motion for Summary Judgment of Defendant Metropolitan Life Insurance Company (hereinafter "Met Life"). Having considered the Motion, Response, Rebuttal and all attachments to each, as well as supporting and opposing authority, the Court finds that the Motion is well taken and should be granted.

### I.  Factual Background and Procedural History

Plaintiff Bobby Cummings was employed by Georgia Pacific Corporation (hereinafter "GP") for approximately twenty-three years.  The last day that Cummings rendered employment services to GP was May 31, 2002, the date on which he suffered a myocardial infarction (heart attack).  During the time period immediately preceding his heart attack, Cummings job title was Boiler Room S Supervisor.  As a result of the heart attack, Cummings was hospitalized from June 1 through June 6, 2002, and thereafter underwent various out-patient medical treatments.

This cause of action arises out of the denial of long-term disability benefits.  Cummings was covered by long-term disability plan titled "Georgia Pacific *Life*Choices Plus Benefits Program, Long-Term Disability Plan" (hereinafter "the Plan").  GP is both the plan sponsor and the plan administrator of the Plan.  However, the responsibility and authority to make determinations as to eligibility for long-term disability benefits was delegated by GP to Met Life.

After his heart attack, Cummings applied for, and was denied long-term disability benefits under the Plan.  Aggrieved by the benefits denial, he filed the subject suit in this Court on January 12, 2005.  The one-count complaint seeks an unspecified amount of compensatory damages for denial of Cummings' long-term disability claim by Met Life.  The subject Motion for Summary Judgment was filed by Met Life on January 20, 2006.  That Motion is now ripe for consideration.

## II.  Legal Standard

**A.   Summary Judgment Standard Under Rule 56**

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.

Civ. P. 56(c).  The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also, Moore v. Mississippi Valley State Univ., 871 F.2d 545, 549 (5th Cir. 1989); Washington v. Armstrong World Indus., 839 F.2d 1121, 1122 (5th Cir. 1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  The movant need not, however, support the motion with materials that negate the opponent's claim.  Id.  As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim.  Id. at 323-24.  The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."  Id. at 324.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists.

It is improper for the district court to "resolve factual disputes by weighing conflicting evidence, . . . since it is the province of the jury to assess the probative value of the evidence." Kennett-Murray Corp. v. Bone, 622 F.2d 887, 892 (5th Cir. 1980).  Summary judgment is also improper where the court merely believes it unlikely that the non-moving party will prevail at trial. National Screen Serv. Corp. v. Poster Exchange, Inc., 305 F.2d 647, 651 (5th Cir. 1962).

**B.   Summary Judgment Standard for ERISA Claims**

Plaintiff's claims fall under the scope of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et seq. (hereinafter "ERISA").  The generally applicable summary judgment standard stated above applies in ERISA cases. Vercher v. Alexander & Alexander, Inc., 379 F.3d 222, 225 (5th Cir. 2004).  However, a somewhat unique summary judgment analysis also applies to ERISA claims because a court acts in an appellate capacity when it reviews an ERISA plan administrator's decision to deny a claim.

The standard for reviewing the decision of the plan administrator differs depending on whether "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).  If the benefit plan in question vests no such authority in the plan administrator, then the

standard of review is *de novo*. Id. If the plan administrator does have the discretion to determine eligibility for benefits or to interpret the terms of the plan, then the applicable standard of review is abuse of discretion. Ellis v. Liberty Mut. Assurance Co. of Boston, 394 F.3d 262, 269 (5th Cir. 2005)(citation omitted). The question of *de novo* standard of review versus abuse of discretion standard of review applies *only* to issues regarding "construction of the meaning of plan terms or plan benefit entitlement provisions." Vercher, 379 F.3d at 226. "[A] plan administrator's factual determinations are always reviewed for abuse of discretion[.]" Id.

The Ellis court also described the level of evidence required to uphold a plan administrator's decision under the abuse of discretion standard. The court stated:

> The law requires only that *substantial evidence* support a plan fiduciary's decisions, including those to deny or to terminate benefits, not that substantial evidence (or, for that matter, even a preponderance) exists to support the employee's claim of disability. *Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."* We are aware of no law that requires a district court to rule in favor of an ERISA plaintiff merely because he has supported his claim with substantial evidence, or even with a preponderance. If the plan fiduciary's decision is supported by substantial evidence and is *not arbitrary and capricious*, it must prevail.

Ellis, 394 F.3d at 273 (emphasis added; footnotes omitted).

In analyzing any category of issues in an ERISA case, "[t]he existence of a conflict is a factor to be considered in determining

5

whether the administrator abused its discretion in denying a claim. The greater the evidence of conflict on the part of the administrator, the less deferential our abuse of discretion standard will be." Vega v. Nat'l Life Ins. Servs., Inc., 188 F.3d 287, 297 (5th Cir. 1999). This is known as the "sliding scale standard" of review. Id. A conflict of interest exists, and the sliding scale standard of review must be applied when "the plan administrator is self-interested, i.e., the administrator potentially benefits from every denied claim." Id. at 295. "The greater the evidence of conflict on the part of the administrator, the less deferential our abuse of discretion standard will be." Id. at 297. The burden is on an ERISA plaintiff to "demonstrate[] a substantial conflict of interest on the part of the fiduciary responsible for benefits determinations[.]" Id. If the plaintiff fails to meet this burden, then the generic abuse of discretion applies, rather than the sliding scale standard.

In the following analysis, the Court applies the above standards to Plaintiff's claims in this case.

### III. Analysis

It is undisputed that under the Plan, Met Life has the discretionary authority to make benefits determinations. Therefore, the initial issue that must be addressed is defining

"long-term disability" under the Plan.  "Long-term disability" is defined as:[1]

> Due to sickness, pregnancy or accidental injury, you are receiving appropriate care and treatment from a doctor on a continuing basis and:
>
> - During the first 24 months following your elimination period, you are unable to earn more than 80% of your predisability earnings or indexed predisability earnings at your **own occupation** for any employer in your local economy, or
>
> - After the first 24-month period, you are unable to earn more than 80% of your indexed predisability earnings from any employer in your local economy at any gainful occupation for which you are reasonably qualified taking into account your training, education, experience and predisability earnings.
>
> Your loss of earnings must be a direct result of your sickness, pregnancy or accidental injury.  Economic factors such as but not limited to, recession, job obsolescence, pay cuts and job-sharing will not be considered in determining whether you meet the loss of earnings test.

Administrative Record, Bates Stamp no. 129.  Under the purview of this definition, the issue in this case is whether Cummings was able to return to his previous job as a Boiler Room Supervisor.

As a result of his heart attack on May 31, 2002, Cummings was hospitalized for a period of six days, from June 1 through June 6. He underwent a heart catheterization, with the affected area ballooned and stinted with reported good results. Administrative

---

[1]The Administrative Record regarding the plan administrator's decision denying Cummings' claim for long-term disability benefits is attached to the Motion for Summary Judgment as Exhibit "3." The Administrative Record contains Bates Stamp numbers in the bottom-right corner of each page.

Record, Bates Stamp no. 53, record from The University of Mississippi Medical Center (hereinafter "UMC").  One of his treating physician at UMC was Dr. Kenneth R. Bennett.  In a UMC record dated June 26, 2002, Dr. Bennett recommended for Cummings to "[c]ontinue at restricted activity[.]" Id. at Bates Stamp no. 50. UMC records indicate that Cummings appeared for additional medical appointments on August 7, 2002, and September 11, 2002. See id., UMC medical records at Bates Stamp nos. 46-65.

On September 19, 2002, Cummings was seen by Dr. H. Davis Dear, a cardiologist with Heart Associates of Central Mississippi. Administrative Record, Bates Stamp nos. 98-99, Clinic Note by Dr. Dear.  Dr. Dear opined that "I see no reason why [Cummings] cannot return to unrestricted activities, with the exception of *severe, heavy lifting*." Id. at Bates Stamp no. 99 (emphasis added); see also, Bates Stamp no. 80, letter from Dr. Dear to Dr. Elmo P. Gabbert.

Dr. Dear's finding that Cummings could resume normal activities, other than "severe, heavy lifting," leads the Court to consider whether Cummings' job requires such activity. Unfortunately, Dr. Dear did not describe exactly what constitutes "heavy lifting."  Cummings describes his job as requiring lifting of up to one-hundred pounds. Administrative Record, Bates Stamp no. 73, Cummings' description of the job.  The Court finds that this does constitute "severe, heavy lifting."  However, the job

description provided by GP for the position of Boiler Room Supervisor states that maximum lifting of up to fifty pounds is a "marginal" requirement for the job. Id. at Bates Stamp no. 44, Occupational Analysis. The Court finds that this does not constitute "severe, heavy lifting." This is the only disputed issue with regard to Cummings' job activities. All agree that the job requires walking, climbing, stooping, bending and occasionally working in extreme cold and heat.

On or about November 7, 2002, Cummings filed a claim for long-term disability benefits under the Plan. Administrative Record, Bates Stamp no. 2, claim file notes. The claim was denied via a letter from Met Life to Cummings dated January 14, 2003. Administrative Record, Bates Stamp nos. 11-13. The claim denial letter states in part:

> To get a better understanding of your occupational physical requirements, your claim was referred for an Occupational Analysis to determine if you would be capable of performing your own occupation, Boiler Room Supervisor.[2] The results of the analysis revealed that your occupation, as it is done in the general economy, is considered medium in physical demand. Lifting, carrying, pushing, and pulling maybe [sic] be required up to 20 – 50 pounds occasionally, 10 – 25 pounds frequently, or 10 pounds constantly. However, you are not required to do any heavy lifting, much less "severe, heavy lifting". Reaching, handling, fingering, talking, hearing, near acuity, depth perception are required on a frequent basis, and stooping, kneeling, crouching are required occasionally.

---

[2]The Occupational Analysis is included as part of the Administrative Record at Bates Stamp nos. 44-45. This Occupational Analysis appears to have been prepared in-house by GP.

> In order to give your claim every possible consideration, we referred your claim to a Board Certified Independent Physician Consultant (IPC) for review. The review concluded that while medicated with metoprolol, captopril, ASA, and lipitor, you have no evidence, on physical examination, of congestive heart failure. The IPC also noted that in view of no current evidence of congestive heart failure, arrhythmia, pericarditis, or recurrent coronary artery disease, the IPC is unable to accept any work-related restrictions. The IPC concluded that you should be able to occasionally lift up to 50 pounds, which is a requirement of your occupation.[3]

Id. at Bates Stamp no. 12 (footnotes added). Met Life went on to conclude that "since there are no restrictions and limitations that would preclude you from work, your claim has been denied." Id.

Cummings appealed the denial of his claim, and provided additional medical records from Dr. Michael Brumley. Dr. Brumley's medical records are included in the Administrative Record as Bates Stamp nos. 21-36. Curiously, Dr. Brumley makes no finding as to whether or not Cummings is capable of performing his job.

In response to the Cummings' appeal, Met Life contracted with Dr. Jane T. St.Clair to provide a Physician Consultant Review. Dr. St.Clair is a Board Certified in Occupational Medicine. Her report is included in the Administrative Record as Bates Stamp nos. 17-18. Dr. St.Clair opined that "[t]here is not evidence that Dr.

---

[3]The Court was not provided with the IPC report referenced in this paragraph of the claim denial letter. However, although Cummings disputes the findings of the IPC, he does not dispute that such findings were in fact reported to Met Life by the IPC.

Brumley's recommendations (if they were available)[4] would be significantly different from Dr. Dear's, since the condition of Mr. Cummings' heart has not deteriorated.  He is merely deconditioned and afraid of work." Id. at Bates Stamp no. 18 (footnote added). After reviewing Dr. Brumley's medical records and Dr. St.Clair's Physician Consultant Review, Met Life concluded "[w]e do not have medical information to support Mr. Cummings inability to return to work....  Therefore, the original claim determination was appropriate." Administrative Record, Bates Stamp no. 16, letter dated July 8, 2003, affirming denial of claim.

    The first issue that this Court must decide in analyzing whether Met Life abused its discretion in denying Cummings' claim is whether the generic abuse of discretion standard, or the sliding scale abuse of discretion standard should apply.  Cummings appears to argue that the sliding scale standard should apply because GP is both the sponsor and the plan administrator of the Plan.  The Court is somewhat confused by this argument because although Cummings' description is correct, it neglects to account for the fact that Met Life is delegated the authority to make determinations as to the eligibility of a claimant for long-term disability benefits. In this relationship, Met life is not the _insurer_, it is simply the

---

[4]The "if they were available" language is an apparent reference to the lack of any opinion offered by Dr. Brumley as to whether Cummings is capable of performing the job of Boiler Room Supervisor.

*third-party benefits administrator*.  As such, the Court fails to see a conflict of interest which would trigger application of the sliding scale abuse of discretion standard.  This Court therefore concludes that it must apply the abuse of discretion standard articulated in Ellis, rather than the sliding scale abuse of discretion standard described by the Vega court. See supra, section II.B. of this Opinion.

The Court now focuses on Cummings' arguments as to why Met Life abused its discretion in denying his long-term disability claim.  Cummings' best argument is that his job requires him to lift up to one-hundred pounds. Administrative Record, Bates Stamp no. 73, Cummings' description of the job.  This contention is rebutted by the job description for the position of Boiler Room Supervisor provided by GP, which states that maximum lifting of up to fifty pounds is a "marginal" requirement for the job. Id. at Bates Stamp no. 44, Occupational Analysis.  As the Court found above, the lifting of one-hundred pounds is considered "heavy lifting," which would prohibit Cummings from performing his job and render him disabled under the Plan.  The Court also found above that the lifting of up to fifty pounds does not constitute "heavy lifting," and that such lifting would not prohibit Cummings from performing his job duties as a Boiler Room Supervisor.

Based on this conflicting evidence, the Court must determine whether Met Life abused its discretion in denying the subject

claim.  To aid in this determination, the Court revisits the definition of "abuse of discretion."  So long as a plan administrator's decision is supported by "substantial evidence," no abuse of discretion may be found. Ellis, 394 F.3d 273. "Substantial evidence" is *less* than a "preponderance" of the evidence, but more than a "scintilla" of the evidence. Id.  In summary, "substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

Under this standard, the Court finds that Met Life did not abuse its discretion in rejecting Cummings' own description of his job.  Met Life relied on its Occupational Analysis which supports a conclusion that no "heavy lifting" is required for the Boiler Room Supervisor position.  Cummings was free to enlist an expert to rebut that finding, or at a minimum, to provide affidavit testimony from co-workers regarding the physical requirements of his job. Cummings failed to take either of these courses of action.  His argument on this issue is therefore rejected, because the position of Met Life is supported by "substantial evidence."

Cummings also argues that he should be found disabled under the Plan because he was found disabled by the Social Security Administration. Administrative Record, Bates Stamp nos. 37-40. However, as stated in the award letter from the Social Security Administration, "[w]e found that you became disabled under *our*

13

*rules* on May 31, 2002." Id. at Bates Stamp no. 37 (emphasis added). Cummings has provided no explanation as to why he should be considered disabled under the *rules of the Plan*, just because he was found to be disabled under the applicable *rules of the Social Security Administration*. In fact, Cummings provided no standard by which the Social Security Administration found that he was disabled. Without any correlation between the two standards, this argument must be rejected.

Cummings finally argues that he cannot perform his job functions because he is constantly tired and short of breath, and because he has headaches and chest pain. Administrative Record, Bates Stamp nos. 67-68, Personal Profile submitted with disability application. This is supported by a letter from Donna Jackson, an employee with Franklin Rehab & Wellness. The Court notes that Jackson is not a medical doctor.

Cummings' self-reported problems, which appear to be substantiated to an extent by Jackson, do not prove that he disabled under the terms of the Plan. This leads the Court to the bottom-line finding that there is simply *nothing in the Administrative Record from a medical doctor of any kind which states that Cummings is physically incapable of performing the job of Boiler Room Supervisor*. Without such evidence, the Court finally holds that Met Life did not abuse its discretion in denying

14

Cummings' claim for long-term disability benefits.  Accordingly, the Defendant's Motion for Summary Judgment must be granted.

## IV.  Conclusion

Based on the holdings presented above:

IT IS THEREFORE ORDERED that the Motion for Summary Judgment of Defendant Metropolitan Life Insurance Company (docket entry no. 10) is hereby granted.  A Final Judgment will be entered which dismisses this case with prejudice.

SO ORDERED this the 4th day of May, 2006.

s/ William H. Barbour, Jr.<br>UNITED STATES DISTRICT JUDGE

tct